

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

Nos. 06-18-00197-CR &
06-18-00198-CR

EDWIN ANTONIO OSORIO-LOPEZ, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th District Court
Upshur County, Texas
Trial Court Nos. 17914 & 17927

Before Morriss, C.J., Burgess and Stevens, JJ.

ORDER

Following a single trial, Edwin Antonio Osorio-Lopez was convicted of aggravated assault with a deadly weapon, for which he was sentenced to twenty years' incarceration,[1] and evading arrest or detention with a vehicle,[2] for which he was sentenced to ten years' incarceration. The sentences were ordered to run concurrently.[3]

On appeal, Osorio-Lopez contends that (1) the evidence was insufficient to establish that a food tray was a deadly weapon and (2) the trial court erred in refusing his request for a competency examination. Because there was some evidence that Osorio-Lopez was incompetent, we abate this matter to the trial court.

## I.   Factual and Procedural Background

On February 5, 2018, Osorio-Lopez was scheduled to enter guilty pleas on charges of evading arrest or detention with a vehicle and unauthorized use of a motor vehicle. Osorio-Lopez declined to enter guilty pleas and instead elected to proceed to trial before the court. On February 13, 2018, Osorio-Lopez returned to court for a pretrial hearing. The trial court acknowledged that the case was set for a bench trial that afternoon, but stated that Osorio-Lopez' interpreter and the attorneys had approached it with some concerns about Osorio-Lopez. The trial court then proceeded to explain the adversarial process to Osorio-Lopez and confirmed that he had a seventh-

---

[1]*See* TEX. PENAL CODE ANN. § 22.02.

[2]*See* TEX. PENAL CODE ANN. § 38.04(2)(A).

[3]In cause number 06-18-00197-CR, Osorio-Lopez appeals from his conviction of evading arrest or detention with a vehicle. In companion cause number 06-18-00198-CR, Osorio-Lopez appeals from his conviction of aggravated assault with a deadly weapon.

2

grade education. Osorio-Lopez indicated that he had experienced mental and emotional problems and had been hospitalized in Wichita Falls following a period of incarceration in Fort Worth. At the conclusion of the hearing, the trial court ordered Osorio-Lopez to be examined by Tom Allen, Ph.D., to determine Osorio-Lopez' competency to stand trial.

Allen issued an evaluation report in which he concluded that Osorio-Lopez was incompetent to stand trial.[4] According to Allen, Osorio-Lopez "appeared to be having considerable difficulty responding to many questions in linear, logical fashion and tended to provide rambling responses and memorial details were very vague." Allen further concluded that Osorio-Lopez exhibited paranoid ideation and suffered from impaired insight. Based on Allen's report, the trial court found Osorio-Lopez incompetent to stand trial and, in conformity with Article 46B.073 of the Texas Code of Criminal Procedure, ordered Osorio-Lopez' commitment to Rusk State Hospital on April 26, 2018, for a period not to exceed 120 days for further examination and treatment.

On August 8, 2018, the trial court was advised by Larry Hawkins, M.D., Unit Psychiatrist at Rusk State Hospital, that after a period of observation and treatment, Osorio-Lopez was re-evaluated and was determined to be competent to stand trial. Hawkins warned, "Current medications are necessary to maintain the defendant's competence."[5] A new trial date was scheduled for October 8, 2018.

---

[4]Allen diagnosed Osorio-Lopez with "Psychotic Disorder NOS," "Cannabis Use Disorder," and "Stimulant Use Disorder by History in Remission." The report noted that Osorio-Lopez was prescribed and was taking antipsychotic medication and medication for allergies and anxiety.

[5]A report dated July 31, 2018, by Sarah J. Rogers, Ph.D., of Rusk State Hospital stated,

3

Three days before the scheduled trial, Osorio-Lopez' appointed counsel filed a motion to withdraw. Counsel informed the trial court that Osorio-Lopez requested that counsel withdraw because Osorio-Lopez could not communicate with counsel. When the trial court asked Osorio-Lopez to explain, he stated that he had a problem in Fort Worth involving a false identification. Osorio-Lopez told the court there was a report from an official who detained him stating that counsel did not listen to Osorio-Lopez. Osorio-Lopez also told the trial court that counsel threatened him on several occasions and sided with the police officers.

Trial counsel explained that Osorio-Lopez was referring to a case he had in Tarrant County in which he was represented by a different attorney. After the trial court explained to Osorio-Lopez that this case had nothing to do with Fort Worth, Osorio-Lopez stated that counsel would not be able to defend him because of the issue he had the first time. Osorio-Lopez remained adamant that appointed counsel in the current case was the same attorney who represented him in Fort Worth. Counsel stated that he never had a case in Fort Worth. The trial court denied the motion to withdraw.

Following jury selection, Osorio-Lopez' court-appointed counsel filed a verified motion for continuance outlining his inability to effectively communicate with Osorio-Lopez. The motion stated that after Osorio-Lopez was determined to be competent and was returned to Upshur County, he was able to effectively communicate with counsel in writing and with the help of counsel's bi-lingual assistant. Counsel went on to state,

> With respect to all assessed capacities, Mr. Osorio-Lopez has a factual understanding as well as rational appreciation of the proceedings against him. Further, he possesses the capacity to consult with his attorney with a reasonable degree of rational understanding. Maintenance of these capacities involves medication adherence and continued stability in his symptoms.

Communications have deteriorated to the point that Defendant is adamant that undersigned counsel had represented him on a prior matter in Tarrant County and despite all attempts of Undersigned Counsel and the court appointed interpreter to convince him otherwise, this thought remains with Defendant. Defendant deems any advice of undersigned counsel to be against his best interest. Trial Counsel requests a continuance to have Dr. Thomas Allen examine Defendant again for competency.

At the hearing on the motion, counsel elaborated,

As we got closer to jury selection and with communications I was able to do through [the interpreter,] it seemed to me that he was starting to have irrational thoughts, for instance, one the court is aware where he thought I represented him in another county in another matter and in his opinion had sold him out on a prior criminal matter. At jury selection[,] he presented written documentation to [the interpreter] that [the interpreter] was able to translate and get back to me last Thursday afternoon and was information he thought would be helpful in his defense. However, it appeared to me that he obviously had a lot of in my opinion irrational thoughts that he deemed were factual. And in furtherance of that[,] this morning he's made serious communications with me about things that he thinks or believes is happening down in the jail that would be horrific if true but to me seem to be irrational thoughts . . . . [H]e basically goes against every piece of advice I give him and gone as far as not signing essential documents like the application for community supervision because he thinks my advice is against his best interest. I am requesting a continuance in both cases to have . . . Dr. Tom Allen examine him again to deem whether or not he's competent because I feel like he's not competent to communicate with me to present a defense today.

The State responded, stating that Osorio-Lopez speaks English when it suits him, that this was probably more of the same, and that there was no "competent advice" which would support a continuance. The trial court thereafter summarily denied Osorio-Lopez' motion for continuance for purposes of an evaluation to determine if he was competent to stand trial.

## II.    The Evidence Was Sufficient to Support a Competency Evaluation

Osorio-Lopez contends that the trial court erred by denying his motion for continuance so that he could be evaluated by Allen to determine his competence to stand trial.

5

"A criminal defendant who is incompetent may not be put to trial without violating due process." *Turner v. State*, 422 S.W.3d 676 (Tex. Crim. App. 2013). "[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1975). This standard is codified in the Texas Code of Criminal Procedure: "A person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or (2) a rational as well as factual understanding of the proceedings against the person." TEX. CODE CRIM. PROC. ANN. art. 46B.003(a).

"These legislative criteria for competency contemplate a defendant who is at least minimally able to interact with his trial counsel in a 'reasonable and rational' way (even if they do not necessarily agree) in formulating decisions how most effectively to pursue his defense." *Turner*, 422 S.W.3d at 689–90. "Under our current statutory scheme, any 'suggestion' of incompetency to stand trial calls for an 'informal inquiry' to determine whether evidence exists to justify a formal competency trial." *Id*. at 691–92 (citation omitted) (footnote omitted); *see* TEX. CODE CRIM. PROC. ANN. art. 46B.004(c), (c-1). "If after an informal inquiry the court determines that evidence exists to support a finding of incompetence, the court shall order an examination . . . to determine whether the defendant is incompetent to stand trial." TEX. CODE CRIM. PROC. ANN. art. 46B.005(a).

Here, Osorio-Lopez' counsel filed a motion for continuance requesting the court to order a formal examination of Osorio-Lopez' competency. During the October hearing, counsel

described Osorio-Lopez' apparent deterioration from his previous competent condition in August. He reminded the trial court of the fact that Osorio-Lopez continued to adamantly believe that he was the same attorney who represented Osorio-Lopez in Fort Worth who had "sold him out." The trial court was likewise reminded of the fact that even after speaking with Osorio-Lopez the previous week and explaining to him that his attorney did not represent him in Fort Worth, Osorio-Lopez continued to believe the opposite. The situation had deteriorated to the extent that Osorio-Lopez would not listen to advice of counsel, a matter about which the trial court had likewise been apprised at the hearing on counsel's motion to withdraw. The trial court was further advised that Osorio-Lopez would not agree to sign an application for community supervision because he believed counsel was working against his best interests. And, the trial court was aware that Osorio-Lopez had previously been declared incompetent and had been diagnosed with a psychotic disorder. Although he was ultimately declared competent in August 2018, the psychiatrist admonished, "Current medications are necessary to maintain the defendant's competence."

Trial counsel also made the trial court aware of Osorio-Lopez' condition on the morning following jury selection. Counsel reported that Osorio-Lopez was experiencing irrational thoughts that he viewed as factual, and counsel stated, "[Lopez has] made serious communications with me about things that he thinks or believes [are] happening down in the jail that would be horrific if true but to me seem to be irrational thoughts." Finally, counsel made the trial court aware of his belief that Osorio-Lopez was not competent to communicate for purposes of presenting a defense. In light of what he believed to be the deterioration of Osorio-Lopez' mental competency, counsel

7

asked the trial court to have Osorio-Lopez examined by Allen, a doctor who was familiar with his condition. The trial court refused that request.

On appeal, Osorio-Lopez contends that the trial court erred in denying his request. The issue is "whether, in light of what became known to the trial court by the conclusion of this informal inquiry, it should have conducted a formal competency trial [or evaluation]." *Turner*, 422 S.W.3d at 692. We review a trial court's ruling on a motion for continuance and its failure to inquire into a defendant's competency to stand trial for an abuse of discretion. *See Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999); *George v. State*, 446 S.W.3d 490, 499 (Tex. App.— Houston [1st Dist.] 2014, pet. ref'd). Using this standard, we do not substitute our judgment for that of the trial court. Instead, we determine whether the trial court's decision was arbitrary or unreasonable. *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009), *superseded by statute on other grounds*, TEX. CODE CRIM. PROC. ANN. art 46B.004(c-1), *as recognized in Turner*, 422 S.W.3d at 692.

"[T]he standard for requiring a formal competency [evaluation] is not a particularly onerous one." *Turner*, 422 S.W.3d at 696. To determine whether the evidence in this case was sufficient to require a formal competency evaluation, we focus on three matters. "First, the standard at the informal inquiry stage is whether there is 'some evidence . . . from any source, that would support a finding that the defendant may be incompetent to stand trial.'" *Boyett v. State*, 545 S.W.3d 556, 563 (Tex. Crim. App. 2018) (quoting TEX. CODE CRIM. PROC. ANN. art. 46B.004(c)). Some evidence is "more than none or a scintilla." *Turner*, 422 S.W.3d at 692. "Second, a trial court must consider only evidence of incompetency, and it must not weigh

evidence of competency against the evidence of incompetency." *Boyett*, 545 S.W.3d at 564. "Third, some evidence must be presented at the informal inquiry stage to show that a defendant's mental illness is the source of his inability to participate in his own defense." *Id*. at 564; *see* TEX. CODE CRIM. PROC. ANN. arts. 46B.024(2), (4), (5).

Here, Osorio-Lopez was hospitalized for his mental illness and was declared competent to stand trial in August 2018. At the time of his release from the hospital and during a brief period after his return, counsel was able to communicate effectively with Osorio-Lopez. The evidence then indicates that Osorio-Lopez began thinking irrationally, believed counsel was the same attorney who represented him in Fort Worth and was working against him, and described to counsel "horrific" things that were happening in the jail, which were not factual. Counsel reported all of this to the trial court and further reported that he could not communicate with his client to present a defense.

Disregarding all evidence of competency, *Boyett*, 545 S.W.3d at 564, we find some evidence that Osorio-Lopez experienced irrational thoughts, was unable to communicate with counsel, believed counsel to be a different attorney entirely, and had a somewhat recent history of mental illness—which could only be stabilized through the continuous use of medication. This evidence would allow a rational inference that (1) Osorio-Lopez suffered "some degree of debilitating mental illness," (2) he refused "to cooperate with counsel to his own apparent detriment," and (3) his mental illness was the source of the condition which prevented Osorio-Lopez from participating in his own defense. *Id.*

9

Having found some evidence to support incompetency, we sustain this point of error and abate the appeal to the trial court. "On [abatement], the trial court shall first determine whether it is presently feasible to conduct a retrospective competency trial, given the passage of time, availability of evidence, and any other pertinent considerations."[6] *Turner*, 422 S.W.3d at 696. If it is found to be feasible, the trial court shall conduct a retrospective competency trial pursuant to Chapter 46B, subchapter C, of the Texas Code of Criminal Procedure. TEX. CODE CRIM. PROC. ANN. ch. 46B, subch. C; *Turner*, 422 S.W.3d at 696–97. Regardless of whether a retrospective competency trial is found to be feasible, the record of the proceedings on remand shall be returned to this Court for reinstatement of the appeal.[7] *See Turner*, 422 S.W.3d at 697.

The reporter's record of all proceedings in the trial court shall be filed in the form of a supplemental reporter's record within twenty days of the final hearing contemplated by this order. *See generally* TEX. R. APP. P. 38.8(b)(3). Any written findings shall be entered on the record and filed in the form of a supplemental clerk's record within twenty days of the final hearing contemplated by this order. *See id.*

All appellate timetables are stayed and will resume on our receipt of the supplemental appellate record.

BY THE COURT

Date: August 14, 2019

---

[6]Having found evidence of incompetency in this case, the trial court "shall order an examination . . . to determine whether the defendant is incompetent to stand trial," but because the State opposes a finding of incompetency in this case, the trial court must conduct a competency trial. TEX. CODE CRIM. PROC. ANN art. 46B.005(a)–(b).

[7]The resolution of Osorio-Lopez' remaining point of error is unnecessary unless or until the matter on remand is resolved and the case is returned to us.

10